# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| SKILLMAN-EASTRIDGE, LTD., | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 3:09-CV-01988-M |
| | § | |
| JPMORGAN CHASE BANK, | § | |
| NATIONAL ASSOCIATION, | § | |
| Defendant, | § | |
| | § | |
| AND | § | |
| | § | |
| FEDERAL DEPOSIT INSURANCE | § | |
| CORPORATION, as Receiver for | § | |
| Washington Mutual Bank, | § | |
| Intervenor. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiff Skillman-Eastridge, Ltd.'s Motion for Summary Judgment [Docket Entry #25], Defendant Federal Deposit Insurance Corporation's Motion to Dismiss [Docket Entry #28] and Motion for Summary Judgment [Docket Entry #31], and Defendant JPMorgan Chase Bank, N.A.'s Motion for Summary Judgment [Docket Entry #39]. For the reasons explained below and for reasons stated on the record at the July 21, 2011 hearing, the FDIC's Motion to Dismiss is **GRANTED with prejudice**.[1] The Motions for Summary Judgment of JPMorgan Chase Bank, N.A. and the FDIC, and the Motion for Summary Judgment of Skillman-Eastridge, Ltd. are **DENIED as moot**.

---

[1] Based on the Joint Stipulation on Construction Status, Docket Entry #87, the Court finds no standing and grants the Motion to Dismiss [Docket Entry #28], rather than reaching the Summary Judgment motions. Because the Joint Stipulation provided new information not known at the time of the July 21, 2011 hearing, the Court is granting the Motion to Dismiss, although based on the evidence then known to the Court, the Court stated and reflected in its minute order, that the Motion to Dismiss would be denied.

## I. BACKGROUND AND PROCEDURAL HISTORY

On September 19, 2007, Plaintiff Skillman-Eastridge, Ltd. ("Skillman") entered into a lease with Washington Mutual Bank ("WAMU" or "Failed Bank") for property located in Dallas, Texas on Skillman Street and Eastridge Drive (the "Lease").[2] WAMU intended to operate a branch bank on the property after it was constructed by WAMU's contractors, but as of September 25, 2008, the date WAMU became insolvent,[3] construction of the branch bank was still underway. The parties filed a joint stipulation relating to the status of construction as of September 25, 2008.[4]

As WAMU's receiver, all of the assets and liabilities of WAMU were transferred to the Federal Deposit Insurance Corporation ("FDIC" or "Receiver"). On the same day, the FDIC entered into a Purchase and Assumption Agreement ("PAA") with JPMorgan Chase Bank, N.A. ("JPMC" or "Assuming Bank"). Under Section 3.1 of the PAA, JPMC purchased from the FDIC "all right, title, and interest of the Receiver in and to all of the assets (real, personal and mixed, wherever located and however acquired) . . . of the Failed Bank whether or not reflected in the books of the Failed Bank as of Bank Closing."[5]

Section 3.5 of the PAA creates exceptions to Section 3.1. JPMC did not purchase, acquire or assume the assets listed in "Schedule 3.5," unless otherwise expressly provided under the PAA.[6] Schedule 3.5 includes "leased Bank Premises and leased Furniture and Equipment and Fixtures and data processing equipment (including hardware and software) located on leased

---

[2] Skillman MSJ App. 6–58.
[3] FDIC MSJ App. 53–59.
[4] Joint Stipulation on Construction Status, Docket Entry #87.
[5] FDIC MTD App. Exh. A ("PAA") § 3.1.
[6] PAA § 3.5.

or owned Bank Premises, if any; provided, that the Assuming Bank does obtain an option under Section 4.6, Section 4.7, and Section 4.8. . . ."[7]

Pursuant to Section 4.6, JPMC had a 90-day option to accept or decline to accept assignment of any leases for "leased Bank Premises, if any."[8] Article I of the PAA defines "Bank Premises" as:

> [T]he banking houses, drive-in banking facilities, and teller facilities (staffed or automated) together with appurtenant parking, storage and service facilities and structures connecting remote facilities to banking houses, and land on which the foregoing are located, that are owned or leased by the Failed Bank and that are *occupied* by the Failed Bank as of Bank Closing.[9] (emphasis added).

The PAA defines "Other Real Estate" as "all interests in real estate (other than Bank Premises and Fixtures), including but not limited to mineral rights, leasehold rights, condominium and cooperative interests, air rights and development rights that are owned by the Failed Bank."[10]

Skillman pleads that by letter dated December 22, 2008, JPMC notified Skillman that it would not exercise its option to assume the Lease under the PAA.[11] On April 13, 2009, the FDIC sent Skillman a notice, stating its decision to "disaffirm" the Lease based on its conclusion that the Lease was burdensome and that disaffirmance would promote the orderly administration of WAMU's affairs.[12] However, on August 4, 2009, Skillman sent a notice to JPMC, stating its view that under the PAA, JPMC had assumed the Lease and that JPMC was in default for failure to pay the monthly lease payments.[13]

---

[7] PAA Schedule 3.5(3) (emphasis added).
[8] PAA § 4.6.
[9] PAA Art. I, at 2. (emphasis added).
[10] PAA. Art. I, at 6.
[11] Orig. Pet. ¶ 14. On March 25, 2009, JPMC sent a follow-up letter, confirming it elected not to assume the Lease and that it had vacated the Bank Premises. Skillman App. 59.
[12] FDIC MSJ App. 118-119.
[13] Skillman App. 60-63.

On October 20, 2009, Skillman filed suit against JPMC for breach of the Lease. The FDIC intervened, and, on February 17, 2011, it removed the case to this Court. The FDIC moved to dismiss Skillman's suit, and all parties moved for summary judgment. In conjunction with their motions, the parties filed various requests for judicial notice and objections to evidence.

## II.   STANDARDS OF REVIEW

### A.   Rule 12(b)(1) Standard

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a claim is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the claim.[14] Exhaustion of administrative remedies,[15] where applicable, and standing[16] are threshold issues that must be resolved before any consideration of the merits of a case. Normally, the court determines subject matter jurisdiction from the sufficiency of the allegations in the complaint, because they are presumed to be true.[17] If a defendant makes a factual attack on subject matter jurisdiction by providing evidentiary materials challenging the jurisdiction of the court, the court is free to weigh evidence from both sides in resolving disputed factual issues.[18] The plaintiff bears the burden of proving jurisdiction by a preponderance of the evidence.[19]

---

[14] *See Home Builders Ass'n, v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation and internal quotation marks omitted).

[15] *See Hedley v. United States*, 594 F.2d 1043, 1044 (5th Cir. 1979) ( "Exhaustion of administrative remedies is a general prerequisite to judicial review of any administrative action."); *McClendon v. Jackson Television, Inc.*, 603 F.2d 1174, 1176 (5th Cir. 1979) ("(N)o one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." (quoting *McKart v. United States*, 395 U.S. 185, 193, 89 S. Ct. 1657, 23 L.E.2d 194 (1969))).

[16] *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-102 (1998). *See also Cox v. City of Dallas, Tex.*, 256 F.3d 281, 303 (5th Cir. 2001)

[17] *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).

[18] *See MDPhysicians & Assoc., Inc. v. State Bd. of Ins.*, 957 F.2d 178, 181 (5th Cir. 1992) (citations omitted).

[19] *See Paterson*, 644 F.2d at 523.

### B. Summary Judgment

Summary judgment is warranted if the pleadings, discovery, disclosure materials, and supporting affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.[20] A genuine issue of material fact exists when a reasonable jury could find for the non-moving party.[21] The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.[22] Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate, by designating specific facts beyond the pleadings that prove the existence of a genuine issue of material fact.[23] In determining whether genuine issues of material fact exist, "factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists."[24]

### III.   ANALYSIS

### A. Exhaustion of Administrative Remedies

The Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA") establishes procedures by which the FDIC can act as the receiver for failed banks, disposing of their assets and stabilizing the claims process for owners of assets formerly entrusted to the failed banks.[25] These procedures include a mandatory administrative process by which

---

[20] Fed. R. Civ. P. 56(c).
[21] *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 417 (5th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).
[22] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 325).
[23] *See* Fed. R. Civ. P. 56(e)(2); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).
[24] *Lynch Props.*, 140 F.3d at 625 (citation omitted).
[25] *See* 12 U.S.C. § 1821.

claimants must pursue certain claims through the FDIC,[26] including (1) "any claim or action for payment from . . . the assets of any depository institution for which the [FDIC] has been appointed receiver," (2) "any action seeking a determination of rights with respect to . . . the assets of any depository institution for which the [FDIC] has been appointed receiver," and (3) "any claim relating to any act or omission of such institution or the [FDIC] as receiver."[27] FIRREA mandates that "except as otherwise provided in this subsection, no court shall have jurisdiction over" the three types of claims enumerated above.[28]

The FDIC argues that Skillman's claims for relief fall within 12 U.S.C. § 1821(d)(13)(D) as either: (1) an action seeking a determination of rights with respect to the assets of WAMU, for which the FDIC has been appointed receiver; or alternatively, (2) as claims relating to an act or omission of WAMU or the FDIC before and after preparation of the PAA. The FDIC asserts that any such claims should be pursued through the administrative claims process established by FIRREA,[29] and that Skillman's failure to do so deprives this Court of subject matter jurisdiction to hear the case.[30] The FDIC relies on cases from other circuits for the proposition that *any* claim relating to an act or omission of the failed institution or the FDIC as receiver is subject to Section 1821(d)'s exhaustion requirement,[31] that Skillman's claim turns on an interpretation of the PAA, which involves FDIC's actions, and that the purpose of FIRREA is "to enable the

---

[26] *See* 12 U.S.C. §§ 1821(d)(3)-(13).
[27] 12 U.S.C. § 1821(d)(13)(D).
[28] *Id.*
[29] 12 U.S.C. §§ 1821(d)(3)-(13).
[30] *See FDIC v. McFarland*, 243 F.3d 876, 887 n. 42 (5th Cir. 2001) (noting § 1821(d)(13)(D) requires claimants of "assets in possession of the FDIC to exhaust administrative remedies prior to filing in court." (citing *Amer. First Fed., Inc. v. Lake Forest Park, Inc.*, 198 F.3d 1259, 1263 (11th Cir. 1999); *FDIC v. Scott*, 125 F.3d 254, 258 (5th Cir. 1997); *Meliezer v. Resolution Trust Co.*, 952 F.2d 879, 882 (5th Cir. 1992); *Nat'l Union Fire Ins. v. City Sav.*, 28 F.3d 376, 393 (3d Cir. 1994); *RTC v. Midwest Fed. Sav. Bank*, 36 F.3d 785, 791 (9th Cir. 1993))).
[31] *See Village of Oakwood v. State Bank & Tr. Co.*, 519 F. Supp. 2d 730, 738 (N.D. Ohio 2007), *aff'd*, 539 F.3d 373 (6th Cir. 2008); *Freeman v. FDIC*, 56 F.3d 1394, 1401 (D.C. Cir. 1995); *Benson v. JPMorgan Chase Bank, N.A.*, No. C-09-5272, 2010 WL 3168390 (N.D. Cal. Aug. 10, 2010); *Aber-Shukofsky v. JPMorgan Chase & Co.*, 755 F. Supp. 2d 441 (E.D.N.Y. 2010).

[FDIC] to efficiently determine creditors' claims and preserve assets of the failed institution without being burdened by complex and costly litigation."[32]

However, the Court cannot conclude that Skillman's claims involve acts or omissions of WAMU or of the FDIC as WAMU's receiver. Rather, they relate to JPMC's actions after it allegedly assumed the Lease under the PAA. The cases cited by the FDIC clearly challenge actions of the failed bank or the FDIC,[33] and this Court is of the view that FIRREA's jurisdictional bar applies only to such claims, not to ones claiming an obligation allegedly undertaken by the assuming bank. The Court is of the view that FIRREA's administrative claims process does not apply after the FDIC relinquishes ownership of the failed bank's property.[34] Since Plaintiff's claims assert that such relinquishment in favor of JPMC occurred, the Court declines to apply FIRREA's jurisdictional bar to this case.[35]

### B. Standing

Standing concerns a party's right to bring a suit, and is quite different from a decision about who should prevail on the merits.[36] To establish standing and show that a court has jurisdiction under Article III to hear its claims, a plaintiff must demonstrate first that its claims

---

[32] *Nat'l Union Fire*, 28 F.3d at 388.
[33] *See Village of Oakwood*, 519 F. Supp. 2d at 732–35; *Freeman v. FDIC*, 56 F.3d 1394, 1401 (D.C. Cir. 1995); *Lloyd v. FDIC*, 22 F.3d 335, 337 (1st Cir. 1994); *Henderson v. Bank of New England*, 986 F.2d 319, 321 (9th Cir. 1993).
[34] In *FDIC v. McFarland*, 243 F.3d 876, 887 n. 42 (5th Cir. 2001), a lease had been assigned to an assuming bank by the FDIC, and plaintiffs sued the assuming bank to prevent foreclosure and assert allegedly superior claims to the proceeds of the mineral lease. The court held that FIRREA's administrative exhaustion requirement "merely requires claimants to assets *in possession* of the FDIC to exhaust administrative remedies prior to filing in court," and that the mandatory administrative claim procedures in FIRREA "are predicated on the FDIC's possession of the property in question. When the FDIC relinquishes ownership, the procedures governing its role as receiver no longer apply to the property." (emphasis added)
[35] *Accord, Excel Willowbrook, LLC, et al. v. JPMorgan Chase Bank, National Assoc.*, No. 4:09-cv-2988 (S.D. Tex. July 13, 2011) (in similar case, holding plaintiff need not have exhausted FIRREA's administrative remedies before filing suit against JPMC).
[36] *Barrett Computer Servs., Inc., v. PDA, Inc.*, 884 F.2d 214, 218-19 (5th Cir. 1989) (citations omitted) (citing *Hill v. City of Houston*, 764 F.2d 1156, 1159 (5th Cir. 1985)). *See also Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005).

amount to a "case" or "controversy."[37] A case or controversy involves injury-in-fact, causation, and redressability.[38] Here, the Court must determine whether Skillman suffered an injury-in-fact that was caused by JPMC.

Skillman asserts JPMC breached the Lease. To prove that claim, Skillman must show that (1) the Lease is valid and extant; (2) Skillman performed or tendered performance of its duties under the Lease; (3) JPMC breached the Lease; and (4) Skillman suffered damages as a result of the breach.[39]

For a person to be liable for another's contract, the alleged obligor must have expressly or impliedly assumed the obligations of that contract.[40] Here, since WAMU and Skillman executed the Lease and JPMC was not a party to it, for Skillman to have standing to sue JPMC it must show that JPMC assumed WAMU's obligations under the Lease. Skillman asserts that the FDIC assumed the Lease when WAMU failed, and then, by the PAA, the FDIC assigned the Lease to JPMC. Skillman's standing thus depends on whether it can assert its interpretation of the PAA as a third-party beneficiary of the PAA, or whether it can ask this Court to examine the PAA as evidence that the FDIC assigned the Lease to JPMC, placing Skillman in privity of contract and estate with JPMC.

### 1. Third Party Beneficiary

The first question presented in determining if Skillman is a third party beneficiary is what law applies—federal common law or Texas law. The Court concludes that federal common law

---

[37] *Steel Co.*, 523 U.S. at 93–102.
[38] *Cox*, 256 F.3d 281, 303 (citing *Bennett v. Spear*, 520 U.S. 154, 167 (1997)).
[39] *Amer. Tourmaline Fields v. Int'l Paper Co.*, No. Civ. A 3:96 CV 3363D, 1999 WL 637224, at *3 (N.D. Tex. 1999) (citing *Wright v. Christian & Smith*, 950 S.W.2d 411, 412 (Tex. App. 1997, no writ); s*ee also Adams v. H & M Meat Prods., Inc.*, 41 S.W.3d 762, 771 (Tex. App.—Corpus Christi 2001, no pet.).
[40] *Valley Reg'l Med. Ctr. v. Wright*, 276 F. Supp. 2d 620, 633 (S.D. Tex. 2001) (citing *Jones v. Cooper Indus., Inc.*, 938 S.W.2d 118, 124 (Tex. App.—Houston 1996, writ denied).

applies, but the result would be the same either way.[41] Federal common law prohibits any person except a party or an *intended* third party beneficiary from claiming legal rights under a contract.[42] Thus, to sue as a third party beneficiary to a contract, a person must show it was the express or implied intent of the parties to contract for its benefit.[43] If the terms of the contract are clear when given their ordinary meaning, those terms should be used to ascertain the intent of the parties to the contract.[44] Third party beneficiary status is rarely granted under federal common law, but is granted even less frequently when the contract at issue involves a government entity, as parties who benefit from government contracts "are generally assumed to be incidental beneficiaries, and may not enforce the contract absent a clear intent to the contrary."[45]

Here, the PAA disclaims any intent to benefit third parties. It states that it is the "intention of the parties hereto that this Agreement, the obligations and statements of

---

[41] The parties dispute whether the Court should apply federal common law or Texas law to the standing dispute. The parties to the PAA were the FDIC and JPMC. "[F]ederal common law governs the construction of government contracts in the usual case." *Clem Perrin Marine Towing, Inc. v. Panama Canal Co.*, 730 F.2d 186, 189 (5th Cir. 1984) (deciding whether to apply admiralty or federal common law to dispute over contract with government entity, holding that it did not matter because the UCC applied either way). Further, "[r]egardless of the result under state . . . law, federal law governs cases involving the rights of the United States arising under nationwide federal programs." *S. Tex Med. Clinics, P.S. v. Phycor, Inc.*, 113 F. Supp. 2d 1094, 1100 (S.D. Tex. 2000) (citing *U.S. v. Vernon Home Health, Inc.*, 21 F.3d 693, 695 (citing *U.S. v. Kimbell Foods*, 440 U.S. 715, 726, 99 S. Ct. 1448, 59 L. Ed. 2d 711 (1979))). Other district courts addressing this issue have applied state law without undertaking a choice of law analysis. *See 290 at 71, LLC v. JPMorgan Chase Bank, N.A.*, No. A-09-CA-576-SS, 2009 WL 3784347, at *4 (W.D. Tex. Nov. 9, 2009); *Elba Inc. and Sierra Slover v. JPMorgan Chase Bank*, No. 2:10-cv9367 DSF (OPx) (C.D. Cal. Mar. 28, 2011); *Firestone Brookshire HE, LLC v. JPMorgan Chase Bank*, No. 2:10-CV-9155-VBF (FMOx) (C.D. Cal. Mar. 18, 2011); *GECCMC 2005-C1 Plummer St. Off. Ltd. P'ship v. JPMorgan Chase Bank, N.A.*, No. 2:10-cv-01615-JHN-SHx (C.D. Cal. July 7, 2010); *Interface Kanner, LLC, v. JPMorgan Chase Bank, N.A.*, No. 2:10-cv-14068-DLG (S.D. Fla. Mar. 18, 2011).
[42] *See Hanak v. Talon Ins. Agency, Ltd.*, 470 F. Supp. 2d 695, 705 (E.D. Tex. 2006); *Lichterman v. Pickwick Pines Marina, Inc.*, No. 1:07CV256-SA-JAD, 2010 WL 717840 at *6 (N.D. Miss. Feb. 22, 2010).
[43] *Lichterman*, 2010 WL 717840 at *6 (citing *Montana v. United States*, 124 F.3d 1269, 1273 (Fed. Cir. 1997)).
[44] *Id.* (citing *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1549 (9th Cir. 1989)).
[45] *Id.* (quoting *Kremen v. Cohen*, 337 F.3d 1024, 1029 (9th Cir. 2003)). When federal law applicable to a decision simply consists of general principles, courts can "look to state law to shape [the] general principles." *Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 n.5 (5th Cir. 1990). Texas law prevents anyone but the parties and intended third party beneficiaries of a contract from enforcing or interpreting the contract. *See Corpus Christi Bank & Trust v. Smith*, 525 S.W.2d 501, 503 (Tex.1975); *RTC v. Kemp*, 951 F.2d 657 (5th Cir. 1992)(applying Texas law); *Staton Holdings, Inc. v. First Data Corp.*, No. Civ. A. 3:04-CV-2321P, 2006 WL 1343631, at *8 (N.D. Tex. 2006) (citing *Missouri Pac. R.R. Co. v. Harbison-Fischer Mfg. Co.*, 26 F.3d 531, 540 (5th Cir. 1994))(applying Texas law).

responsibilities hereunder, and all other conditions and provisions hereof are for the sole and exclusive benefit of the Receiver, the Corporation and the Assuming Bank and for the benefit of no other person."[46] Under such terms, federal common law treats Skillman as an incidental beneficiary, with no legal rights to enforce the PAA.

Some federal district courts, using state law without undergoing an express choice of law analysis, have examined identical language in the PAA between the FDIC and JPMC, and have found the plaintiff-lessors not to be third party beneficiaries. In *290 at 71*, Judge Sparks, applying Texas law, found "undisputedly [that there was] no clear reference in the PAA" to plaintiff-lessor, and that the plaintiff was thus not a third party beneficiary of the PAA.[47]

Applying California law, two other district courts rejected the third party beneficiary status claimed by the plaintiff-lessors, relying on language in the PAA disclaiming an intent to benefit third parties.[48] A district court applying Florida law relied on the same PAA language in rejecting a third party beneficiary claim.

The Court concludes that Skillman is not a third-party beneficiary of the PAA under either federal law or Texas law.

### 2. Privity of Contract and Estate

Skillman alternatively claims that it is in privity of contract and estate with JPMC, because JPMC assumed the Lease. It is black letter law that "[i]n order to maintain an action to recover damages flowing from the breach of a written agreement, there must ordinarily be a privity existing between the party damaged and the party sought to be held liable" for the

---

[46] PAA, § 13.5.
[47] *290 at 71*, 2009 WL 3784347, at *4 n.3.
[48] *GECCMC, at *12*; *Firestone, at *5-7*.

breach.[49] "Privity . . . means the mutual or successive relationship to the same rights of property."[50]

Skillman alleges that the FDIC assumed WAMU's obligations under the Lease, then transferred and assigned the entire leasehold interest to JPMC by Section 3.1 of the PAA. "When [an] assignor conveys its entire [leasehold] interest, without retaining any reversionary interest, the assignee becomes a tenant in place of the original lessee and is in privity of estate and contract with the lessor."[51] The parties do not dispute that, by operation of law, the FDIC, as Receiver, assumed WAMU's entire interest in the Lease, subject to disaffirmance or conveyance. If the FDIC then assigned its entire interest in the Lease to JPMC, Skillman would be in privity of contract and estate with JPMC and would have standing to bring this claim.[52] Skillman claims the PAA is evidence of such an assignment, which establishes a binding relationship between it and JPMC.

The provisions of the PAA determine which assets the FDIC assigned outright to JPMC and which assets JPMC had an option to assume. The PAA assigned most of WAMU's assets outright to JPMC but not "Bank Premises," which JPMC had an option to assume.[53] If the property in issue is "Bank Premises," JPMC did not assume it. If it is not "Bank Premises," JPMC received the property outright via the PAA which is, in essence, an assignment from the FDIC.

Skillman argues the Lease is unambiguously *not* "Bank Premises," as the property was not occupied by WAMU and did not contain sufficient structures under Section 4.6 of the PAA

---

[49] *Vara-Portofino Tech Ctr., LLC v. Sandvik Mining and Const. USA, LLC*, No. H-09-2376, 2009 WL 4263975, at *4 (S.D. Tex. 2009) (quoting *Boy Scouts of Amer. v. Responsive Terminal Sys., Inc.*, 790 S.W.2d 738, 747 (Tex. App.—Dallas, 1990, writ denied).
[50] *Id.* (quoting *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 653 (Tex. 1996)).
[51] *718 Assocs., Ltd. v. Sunwest N.O.P., Inc.*, 1 S.W.3d 355, 361 (Tex. App.-Waco, 1999) (citing *Amco Trust, Inc. v. Naylor*, 159 Tex. 146, 317 S.W.2d 47, 50 (1958)).
[52] *Id.*
[53] PAA, §§ 3.1, 4.6.

to be considered Bank Premises.  The FDIC and JPMC, in contrast, argue that land held for a future branch bank is clearly "Bank Premises" under the PAA, or alternatively, that the relevant PAA provisions are ambiguous and that their mutual intent establishes a meaning contrary to that asserted by Skillman.

A number of other district courts examining identical language in a PAA between the FDIC and JPMC have analyzed the privity issue.[54]  In *290 at 71*, Judge Sparks reasoned that denying plaintiff standing because it was not a party to the PAA would be a "catch-22 that would keep plaintiff from asserting its rights under the lease against the new lessee even if a valid assignment of the lease did occur."[55]  Judge Sparks concluded that the PAA would be "absolutely meaningless" if the FDIC and JPMC "could determine between themselves . . . what property is 'Bank Premises' . . . notwithstanding the express definition of the PAA."[56]  Judge Sparks found that the PAA was "unambiguous as a matter of law" and that the **vacant land** in question, though leased for a future bank, was not "Bank Premises" as defined by the PAA.[57]  Thus, the court held that the FDIC assigned the lease to JPMC under the PAA, and that the plaintiff-lessor had standing to assert a breach of lease claim against JPMC.[58]  Likewise, in *Excel Willowbrook*, the court determined that the **vacant property** at issue was "Other Real Estate" which was automatically assigned to JPMC, making the plaintiffs in privity with JPMC, with standing to assert a breach of lease claim against it.

---

[54] *See 290 at 71,* 2009 WL 3784347, at *5 (W.D. Tex. Nov. 9, 2009); *Elba*, No. 2:10-cv-9367 DSF (OPx) (C.D. Cal. Mar. 28, 2011); *Firestone Brookshire HE, LLC v. JPMorgan Chase Bank*, No. 2:10-CV-9155-VBF (FMOx) (C.D. Cal. Mar. 18, 2011); *GECCMC 2005-C1 Plummer St. Off. Ltd. P'ship v. JPMorgan Chase Bank, N.A.,* No. 2:10-cv-01615-JHN-SHx (C.D. Cal. July 7, 2010); *Interface Kanner, LLC, v. JPMorgan Chase Bank, N.A.*, No. 2:10-cv-14068-DLG (S.D. Fla. Mar. 18, 2011).
[55] *290 at 71, LLC*, at *4; *Cent. Sw. Tex. Dev., LLC v. JPMorgan Chase Bank National Association,* Case No. 1:09-cv-00819-SS, at 10 (W.D. Tex. Aug. 8, 2011). The position taken by JPMC and the FDIC, that determinations denying standing be made without analyzing whether an assignment occurred, would essentially bar lessors from suing assignees in the failed bank context. *See SR Partners Hulen, LLC v. JPMorgan Chase Bank Nat'l Ass. and the FDIC, as receiver for Washington Mutual Bank,* No. 3:10-cv-00437-B, at *11-12 (N.D. Tex. July 21, 2011).
[56] *Id.* at *7 n.5.
[57] *Id.* at *5.
[58] *Id.*

Accordingly, to determine standing based on Skillman's contention that it is in privity with JPMC, the Court must interpret the PAA and determine whether the property at issue constitutes Bank Premises or Other Real Estate. The PAA defines Bank Premises as:

> [T]he banking houses, drive-in banking facilities, and teller facilities (staffed or automated) together with appurtenant parking, storage and service facilities and structures connecting remote facilities to banking houses, and land on which the foregoing are located, that are owned or leased by the Failed Bank and that are *occupied* by the Failed Bank as of Bank Closing.[59]

The PAA defines "Other Real Estate" as: "all interests in real estate (other than Bank Premises and Fixtures), including but not limited to mineral rights, leasehold rights, condominium and cooperative interests, air rights and development rights that are owned by the Failed Bank."[60] The Court finds this language in the PAA not to be ambiguous and therefore, it will not to look to parol evidence to construe its meaning.

In contrast to the facts in *290 at 71* and *Excel*, as of the relevant date, the property at issue here was not a vacant lot. As stipulated by the parties, it consisted of a completed "Building Shell", without installed banking or computer equipment.[61] Contractors were actively working in the interior space.[62] Although WAMU had begun to pay rent under the Lease on September 17, 2008, the parties stipulate that pursuant to the Lease, rent was to commence 140 days after Skillman delivered the land to WAMU, regardless of the stage of construction.[63] A Certificate of Occupancy was issued by the City of Dallas only six days after WAMU closed.

To determine if the property was "Bank Premises" under the PAA, the Court must focus on: 1) the characteristics of the physical structure on the lot as of September 25, 2008; and 2) whether the structure was "occupied" on that date.

---

[59] PAA Art. I, at 2. (emphasis added).
[60] PAA. Art. I, at 6.
[61] Joint Stipulation on Construction Status, Docket Entry #87.
[62] *Id*.
[63] *Id*. at 2

Skillman argues that to be Bank Premises, a branch bank had to be operating on the site on September 25, 2008.[64] Skillman's interpretation seemingly requires 100% completion of the structure with its paint dry, a "Welcome to WAMU" sign at the front door, and tellers behind the counter. In the Court's view, such an interpretation conflicts with the PAA. While a vacant lot or even a slab of concrete with one wall constructed is not a completed banking house, a structure six days from issuance of a Certificate of Occupancy is a banking house under the PAA. The exterior of the building was completed prior to closing, and the remaining work was largely cosmetic in nature, including placing banking equipment inside the building, finishing painting the interior, installing interior doors, and completing installation of flooring.[65] Based on the parties' stipulated descriptions of the state of completion, the Court finds the structure to be a "banking house" under the PAA's definition of Bank Premises.

That is not the end of the inquiry, however. Under the PAA, to constitute Bank Premises, a banking house must be "*occupied* by the Failed Bank as of Bank Closing." (emphasis added). The PAA does not explicitly define the term "occupied."[66] Skillman cites to decisions that have looked at the issue of occupancy in the real estate context and found that occupancy requires a physical presence on the property, not just possession.[67] Defendants argue that the Court should use the plain and ordinary meaning of occupancy and cite to Black's Law Dictionary, which defines "occupy" as "to take or hold possession."[68]

Skillman argues that since a Certificate of Occupancy was not issued until October 1, 2008, WAMU was not legally allowed to have a physical presence on the property in order to

---

[64] Plaintiff's Supplemental Briefing, Docket Entry #90, at 3.
[65] Joint Stipulation on Construction Status, Docket Entry #87.
[66] The PAA has a section concerning occupancy costs that indicates that JPMC would have to pay rent, taxes, fees, and insurance during its occupancy of leased Bank Premises. However, under the Lease between WAMU and Skillman, rent would be paid beginning on a certain date, so payment of rent does not help resolve the issue of occupancy under the PAA.
[67] Plaintiff's Supplemental Briefing, Docket Entry #90, at 7-9.
[68] Defendants' Supplemental Briefing, Docket Entry #89, at 5-6.

conduct business and thus, the premises could not be "occupied" by WAMU.[69] Defendants contend that WAMU's possession of the property coupled with its rent payment is sufficient to demonstrate occupancy, and, in addition, the issuance of the Certificate of Occupancy on October 1 shows substantial completion on September 25, 2008.

The parties offer different interpretations concerning what possession of the property means in determining occupancy. The FDIC and JPMC argue that the Court should find that WAMU "occupied" the leased property when it was given possession of the property on May 1, 2008 and began construction, or in the alternative, when it began paying rent on September 17, 2008.[70] Skillman argues that mere possession of the property does not constitute occupancy and that WAMU must have been conducting banking business on the premises to be occupying a banking house. Neither argument completely resolves the issue of occupancy.

The term "occupied" in the definition of Bank Premises does not refer simply to the land under the lease—it refers only to land in the context of the enumerated structures actually being present ("land on which the foregoing are located").[71] In the Court's view, a proper reading of the PAA requires WAMU not only to have taken possession of the land, but also for at least one of the structures described in the PAA's definition of Bank Premises to be substantially completed when WAMU closed. If the Court were to accept the FDIC and JPMC's argument that mere possession of the land equals occupancy, WAMU would have "occupied" the vacant lot in May, although it had no structure on it.

The structures on the land as of September 25, 2008 constituted a "banking house" under the PAA. WAMU had possession and complete control over the structure which was

---

[69] Plaintiff's Supplemental Briefing, Docket Entry #90, at 6.
[70] Defendants' Supplemental Briefing, Docket Entry #89, at 6.
[71] PAA Art. I, at 2.

substantially completed and occupied by WAMU. The Court therefore finds it to be Bank Premises under the PAA, and not assumed by JPMC.

## IV.    CONCLUSION

Because the Lease was for Bank Premises, JPMC had the right to, and did elect not to assume it. Therefore, Plaintiff is not in privity with JPMC, and does not have standing to enforce the Lease against it. Therefore, Defendant's Motion to Dismiss is GRANTED with prejudice. Both Plaintiff's and Defendants' Motions for Summary Judgment are DENIED as moot.

**SO ORDERED.**

September 29, 2011.

*[signature]*

**BARBARA M. G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**